Filed 7/15/15  In re Joshua P. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JOSHUA P., a Person Coming Under the Juvenile Court Law. | B258606<br>(Los Angeles County<br>Super. Ct. No. FJ48628) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSHUA P.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Robert J. Totten, Juvenile Court Referee.  Affirmed in part as modified, reversed in part, and remanded with directions.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

The juvenile court sustained a petition under Welfare and Institutions Code section 602, finding true the felony charge that minor Joshua P. committed the crime of vandalism in violation of Penal Code section 594, subdivision (a).[1] The court ordered Joshua to remain a ward of the court[2] and placed him in a long-term camp for nine months with a maximum confinement period of four years and eight months. Joshua appeals from the adjudication/disposition order.

Joshua contends the juvenile court erred in admitting statements he made after his arrest but before he was given *Miranda*[3] warnings. He also contends there is insufficient evidence supporting the court's true finding because the prosecution failed to prove the requisite amount of damage for felony vandalism ($400 or more) under section 594, subdivision (b)(1). We reject the first, but agree with Joshua's latter contention. Accordingly, we affirm the adjudication as misdemeanor vandalism, and remand the matter for a new disposition hearing.

## BACKGROUND

On July 10, 2014, the district attorney filed a petition under Welfare and Institutions Code section 602, alleging 16-year-old Joshua committed two counts of felony vandalism (graffiti), one on a wall (count 1), and one on a United States Postal Service mail truck (count 2), causing over $400 of damage in each instance, in violation of section 594, subdivision (a). Joshua denied the petition and the juvenile court held a contested adjudication hearing.

Los Angeles Police Department Officer Ryan Nguyen testified at the hearing. He and other officers responded to a vandalism call on July 8, 2014, about 5:00 p.m. When he arrived on the scene at James M. Wood Boulevard and Burlington Street in the City of

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

[2] At the time of his arrest for this offense, Joshua was a ward of the court with multiple sustained delinquency petitions and was on probation in the Community Detention Program.

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

2

Los Angeles, he observed Joshua running on the sidewalk toward him. Joshua was holding an aerosol can containing black spray paint. Officer Nguyen detained Joshua in front of a wall that was freshly painted with black graffiti. Aside from the other officers and Joshua, Officer Nguyen did not see anyone else in the area. Officer Nguyen placed Joshua in the back of his patrol car and then walked around to examine the graffiti.

Graffiti covered walls on both sides of the street along the entire block. Officer Nguyen observed approximately seven locations on the block where he determined the graffiti was freshly painted based on the look and smell of the paint. Most of the graffiti included the letters "CRS," which stands for the gang "Crazy Ryders," according to Officer Nguyen. One of the seven locations of graffiti Officer Nguyen referenced was the back of a United States Postal Service mail truck which was spray painted with "CRS" in large black letters. Officer Nguyen described the size of the graffiti on the mail truck "as three feetish [*sic*] kind of like in a square written with his hand moving up and down . . . ."

Officer Nguyen transported Joshua to the police station in his patrol car. According to Officer Nguyen, during the car ride Joshua "was begging for mercy." Officer Nguyen recalled Joshua saying "Come on sir, I know I fucked up but give me a chance. Let me go. I was stupid to write all that shit on the walls. Please let me go." Joshua repeated words to this effect during much of the ride. Officer Nguyen did not ask Joshua any questions during the ride (or before the ride). At some point, Joshua admitted to Officer Nguyen that the letters "CRS" stand for Crazy Ryders and that he was associated with CRS. It is not clear from Officer Nguyen's testimony when Joshua made these admissions (at the time of his arrest, during the ride to the station or at the station).

Officer Nguyen gave Joshua *Miranda* warnings at the station and asked Joshua if he wanted to talk to officers about "what he did or admit to it" and make a written statement. Joshua declined.

Officer Nguyen testified based on his experience with vandalism investigations that it would cost "over or around" $400 to remove graffiti from a wall. In response to this testimony, the juvenile court stated: "That may be the estimate with regard to the

3

walls, but I don't think there is dispute that the cleaning of graffiti of a vehicle is going to take $400 or more." Neither defense counsel nor the prosecutor commented on the court's statement.

At the conclusion of the prosecution's case, defense counsel asked the juvenile court to exclude Joshua's statements to Officer Nguyen on the ground they were inadmissible under *Miranda*. Defense counsel also argued there was insufficient evidence demonstrating Joshua committed vandalism because the evidence merely showed Joshua possessed a paint can.

The juvenile court denied the defense's motion under *Miranda*, commenting that Officer Nguyen had not asked Joshua any questions and Joshua's statements were spontaneous.

Discussing whether the charges constituted felony vandalism (damage of $400 or more), the prosecutor stated: "The weakest element of all of the charges is whether or not count two is a felony." Defense counsel explained: "I am not contesting the value. I think it's reasonable to assume that that would be more than $400 on a postal truck and on the walls as well."

The juvenile court granted the defense's motion to dismiss count 1 (vandalism of the wall), after reviewing photographs of graffiti at the crime scene and questioning which particular graffiti the prosecution was attributing to Joshua. The court denied the defense's motion to dismiss count 2 (vandalism of the mail truck).

Joseph H., a minor, testified for the defense. On July 8, 2014, about 3:00 p.m., Joseph was "passing through" the area around James M. Wood Boulevard and Burlington Street. He saw the United States Postal Service mail truck with the "CRS" graffiti on it. He did not see Joshua in the area. He did not know Joshua.

Joshua testified in his defense. He denied committing acts of vandalism on July 8, 2014, but admitted he was in possession of a paint can. He stated he had gone to the store with his mother. He walked outside the store to make a telephone call. A boy ran toward him and tossed him a paint can, stating "'Here, hold this.'" Officers were chasing the boy and the boy ran inside a building. Joshua "heard screeching tires so [he] ducked

4

down." Someone told Joshua to run and he did. Then he was arrested and placed in a police car.

According to Joshua, the officers did not ask him any questions while he was in the patrol car. Joshua told an officer, "'Shut up, fool, you got me fucked up. I didn't tag on the wall, you got the wrong kid.'"

On cross-examination, Joshua testified he also was arrested for "tagging" in November 2013. On that occasion, he admitted the offense—that he tagged "CRS." During cross-examination, Joshua denied he belonged to the gang CRS and stated he tagged "CRS" in 2013 because someone "forced" him to do it. Joshua also denied telling Officer Nguyen he was a Crazy Ryders gang member and that he had committed vandalism on July 8, 2014, the date of the instant offense.

The juvenile court found count 2 (vandalism of the mail truck) to be true and declared the offense a felony. The court ordered Joshua to remain a ward of the court and placed him in a long-term camp for nine months with a maximum confinement period of four years and eight months.

## DISCUSSION

### Miranda

Joshua contends the juvenile court erred in admitting statements he made after his arrest but before he was given *Miranda* warnings.

As set forth in *Miranda*, *supra*, 384 U.S. at page 444, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The "special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300.) The "term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than

5

those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Id.* at p. 301, fn. omitted.)

As the United States Supreme Court made clear in *Miranda*, *supra*, 384 U.S. at page 478, "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the] holding" in *Miranda*.

"In reviewing a trial court's ruling on a motion to suppress evidence based upon a *Miranda* violation, '"we accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained." [Citation.]'" (*People v. Bejasa* (2012) 205 Cal.App.4th 26, 35.)

The trial court did not err in determining Joshua was not subject to interrogation after he was taken into custody and before he was given *Miranda* warnings. Officer Nguyen testified he did not ask Joshua any questions before Joshua began pleading with Officer Nguyen to release him and taking responsibility for placing graffiti on the walls. Joshua, testifying in his defense, agreed Officer Nguyen did not ask him any questions while he was in the patrol car. There is no evidence demonstrating officers spoke any words or performed any actions which were likely to elicit an incriminating response from Joshua before Joshua was given *Miranda* warnings.

Arguing his statements were not spontaneous and were the product of custodial interrogation, Joshua points to the following portion of Officer Nguyen's redirect examination:

Prosecutor: "When he admitted to having tagged all the walls, you were asking him questions immediately prior to that?"

6

Officer Nguyen: "No I wasn't."

Prosecutor: "Would you consider that a spontaneous statement asking what he did? Was this in response to anything you said or --"

Officer Nguyen: "It would not be spontaneous. He was begging for mercy."[4]

Joshua interprets this testimony to mean his statements were not spontaneous but were made in response to his "being accused, if not questioned" by Officer Nguyen. Joshua argues Officer Nguyen must have been accusing him of a crime (i.e., interrogating him) if he was begging for mercy. Joshua asserts, "The totality of the circumstances in this case indicates that there was coercive pressure on [him] to make a statement."

We disagree with Joshua's interpretation of the evidence. The evidence shows Joshua was detained with a spray paint can in his hand after having run from officers. Officer Nguyen placed Joshua in the back of his patrol car without questioning him about the crime. While Joshua sat in the patrol car, officers examined the "CRS" graffiti. Joshua knew the predicament he was in, having been arrested in the past for tagging CRS. That Joshua begged for mercy and acknowledged it was "stupid" to place graffiti on the walls does not demonstrate Officer Nguyen was interrogating him. There is no evidence officers said or did anything that was likely to elicit an incriminating response from Joshua.

Joshua also notes Officer Nguyen's testimony that Joshua admitted he was associated with the Crazy Ryders gang. Joshua argues "he would have no reason to volunteer" that and must have made the admission in response to custodial interrogation. It is not clear from Officer Nguyen's testimony when Joshua made that admission, before or after he was given *Miranda* warnings. When describing the statements Joshua made during the car ride to the station—the statements that were the subject of Joshua's motion to suppress under *Miranda*—Officer Nguyen did not include that admission. At the end of direct examination, the prosecutor asked Officer Nguyen if Joshua admitted to him that

---

[4] During cross-examination, Officer Nguyen testified he did not ask Joshua any questions prior to or during the car ride to the station.

he was associated with the Crazy Ryders gang and Officer Nguyen answered affirmatively. Officer Nguyen was not asked and he did not state when Joshua made that admission. The fact Joshua declined to make a statement about the crime after being given *Miranda* warnings does not mean he declined to admit his association with the Crazy Ryders gang. The record contains insufficient information about the circumstances of the admission to conclude the trial court should have excluded it under *Miranda*.

Joshua has not established the juvenile court erred in admitting his statements. The record does not demonstrate a *Miranda* violation.

**Sufficiency of Evidence of Felony Vandalism**

Joshua contends there is insufficient evidence supporting the juvenile court's true finding on the felony vandalism charge because the prosecution "failed to prove that the damage done to the rear panel of the postal truck was $400.00 or more" as required under section 594, subdivision (b)(1).[5]

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of

---

[5] Section 594, subdivision (b)(1), states: "If the amount of defacement, damage, or destruction is four hundred dollars ($400) or more, vandalism is punishable by imprisonment pursuant to subdivision (h) of Section 1170 or in a county jail not exceeding one year, or by a fine of not more than ten thousand dollars ($10,000), or if the amount of defacement, damage, or destruction is ten thousand dollars ($10,000) or more, by a fine of not more than fifty thousand dollars ($50,000), or by both that fine and imprisonment."

review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] "'Although it is the duty of the [trier of fact] to acquit a defendant if it finds the circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]""" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

Joshua does not challenge the sufficiency of the evidence demonstrating he committed vandalism by placing the graffiti on the back of the United States Postal Service mail truck. He argues there is insufficient evidence demonstrating his vandalism caused the $400 or more of damage required for felony vandalism. Accordingly, he asks this court to affirm the adjudication order as modified to reflect a true finding on misdemeanor vandalism.

The prosecution presented the following testimony on the general amount of damage graffiti causes on a wall:

Prosecutor: "Are you familiar with the way in which damage [that] was caused by graffiti is calculated or estimated for monetary-damage amounts?"

Officer Nguyen: "Yes. We have a list that's created, I believe, by the City of how much things could cost."

Prosecutor: "Okay in your experience over your [75] to 100 vandalism[] investigati[ons] and your 17 years as a police officer, would you agree that the current amount for the current estimate for one wall or one piece of graffiti is approximately $400?"

Officer Nguyen: "Yes. It's over or around."

Prosecutor: "Somewhere around $400 per wall?"

Officer Nguyen: "Yes."

9

Immediately after this testimony, the juvenile court commented: "That may be the estimate with regard to the walls, but I don't think there is dispute that the cleaning of graffiti of a vehicle is going to take $400 or more." Neither the prosecutor nor defense counsel responded. The prosecutor did not present further evidence on the amount of damage caused by graffiti.

During argument after the close of the prosecution's case, the prosecutor stated: "The weakest element of all of the charges is whether or not count two [vandalism of the mail truck] is a felony." Defense counsel explained: "I am not contesting the value. I think it's reasonable to assume that that would be more than $400 on a postal truck and on the walls as well."

The prosecution's burden to prove count 2 (vandalism of the mail truck) was a felony was not relieved by defense counsel's failure to challenge the sufficiency of the evidence on damage during argument after the close of the prosecution's case. The prosecution presented no evidence about the cost to clean graffiti off the back of a mail truck. The type of coating on the truck would impact how expensive it is to remove spray paint. Based on the lack of evidence, any finding it would cost $400 or more to remove graffiti from the mail truck is pure speculation and not sufficient to prove this element of felony vandalism beyond a reasonable doubt. Accordingly, we affirm the adjudication as misdemeanor vandalism, and remand the matter for a new disposition hearing. (§ 594, subd. (b)(2)(A) ["If the amount of defacement, damage, or destruction is less than four hundred dollars ($400), vandalism is punishable by imprisonment in a county jail not exceeding one year, or by a fine of not more than one thousand dollars ($1,000), or by both that fine and imprisonment"].)

10

## DISPOSITION

The adjudication order is modified to reflect a true finding on misdemeanor vandalism.  As so modified, the adjudication order is affirmed.  The disposition order is reversed, and the matter is remanded for a new disposition hearing and order.

NOT TO BE PUBLISHED.


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


JOHNSON, J.